IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MARSHALL COLE                                                                                    PETITIONER
ADC #113554

V.                                    NO.  2:08cv00056 WRW-JWC

LARRY NORRIS, Director,                                                                        RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

    2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **RECOMMENDED DISPOSITION**

Marshall Cole, formerly an Arkansas Department of Correction (ADC) inmate, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 2).[1] He does not attack his underlying criminal conviction or sentence; instead, he challenges a prison disciplinary decision. Respondent filed a response and supporting exhibits (doc. 11). For the reasons that follow, the petition should be **denied**.

I.

In October 2007, Petitioner was housed in the ADC's East Arkansas Regional Max Unit. On October 3, 2007, Corp. Lisa Montague, a corrections officer, prepared a major

---

[1] According to Respondent, Petitioner is on parole for third-degree domestic battering, for which he received a four-year term of imprisonment in 2006. Parole status does not deprive a federal court of jurisdiction over a § 2254 habeas petition because a parolee is still considered to be "in custody" under an unexpired sentence. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *Jones v. Jerrison*, 20 F.3d 849, 852 n.2 (8th Cir. 1994).

disciplinary report charging Petitioner with violations of ADC Rule 10-3 (indecent exposure), Rule 11-1 (insolence to a staff member), Rule 11-2 (using abusive/obscene language) and Rule 12-1 (failure to obey staff order).  According to the charge, Montague observed Petitioner standing in his cell door with his hand in his pants.  She later noticed that he had tied a sheet to his bars, blocking view into his cell, but he was peeping out from behind the sheet.  Montague went to his cell, and the sheet fell, exposing his naked penis.  She gave a direct order for him to stop his behavior.  (Resp't Ex. A, at 1 [doc. 11-2].)

At a disciplinary hearing on December 10, 2007, Petitioner said he put the sheet up to use the bathroom and it fell.  He said Montague failed to report any derogatory language.  He said Montague "had been laying to get [him]" in retaliation for an informal grievance he had written.  The hearing officer found Petitioner guilty of violating Rules 10-3 and 12-1, but not guilty of the remaining charges.  The evidence relied upon was the staff eyewitness report.  As punishment, Petitioner received thirty days of punitive isolation and was reduced from Class III to Class IV, but no good-time days were forfeited.  (*Id.* at 2-3.)  He appealed to the warden, who affirmed.  (*Id.* at 3-4.)  He then appealed to the disciplinary hearing administrator, who reversed the guilty finding on the Rule 12-1 violation, upheld the Rule 10-3 decision and class reduction, and decreased the isolation term to fifteen days.  (Resp't Ex. B, at 1 [doc. 11-3].)  Petitioner then appealed to the ADC director, who affirmed the hearing administrator's modified findings and punishment in a decision dated March 21, 2008. (*Id.* at 2.)  On April 9, 2008, Petitioner was released on parole from the ADC.[2]  (Resp't Ex. C [doc. 11-4].)

---

[2]Mail from the Court, addressed to Petitioner in the ADC, has been returned as nondeliverable and marked "paroled" (doc. 5, 6, 10, 12).  Petitioner has not provided a new

In this federal habeas action, Petitioner alleges the disciplinary was in violation of due process. He says that, on March 15, 2007, he wrote an informal grievance against Montague for harassment and discrimination. He contends that the October 3, 2007 disciplinary charge was in retaliation for that grievance because there was no indecent exposure. He says he asked that the camera be reviewed because it would show no such action occurred, but no review was done.

Respondent first argues that, because Petitioner does not challenge the fact or duration of his ADC confinement, his current claims are simply challenges to the conditions of that confinement, cognizable only in a 42 U.S.C. § 1983 civil rights action. Respondent further argues that Petitioner's due process claims lack merit because he had no liberty interest in class status, that any claims for relief are moot because of his release from the ADC, and that, even if any liberty interest was implicated, he was afforded adequate due process protections.

II.

"Federal law opens two main avenues to relief on complaints related to imprisonment:" a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a civil rights complaint pursuant to 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). The essence of habeas corpus "is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas is thus the

---

address, nor has he communicated with the Court since his release.

exclusive remedy when an attack "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489.  Where the length of an inmate's confinement is affected by the loss of good-time credits as a result of an adverse prison disciplinary decision, federal habeas is the exclusive federal forum for claims challenging those disciplinary decisions. *Portley-el v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002).

A civil rights complaint under § 1983, on the other hand, "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser*, 411 U.S. at 499.  Where no good-time credits were eliminated by a prison disciplinary determination, that decision has no effect on the term of incarceration ordered by the prisoner's original criminal judgment of conviction and a prisoner challenging the decision "raise[s] no claim on which habeas relief could have been granted on any recognized theory." *Muhammad*, 540 U.S. at 754-55. *See also Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254 because they were not alleged to have illegally extended his period of confinement); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (dismissing habeas petition for lack of subject matter jurisdiction where prisoner did not "make any colorable allegation that his underlying conviction is invalid or that he is otherwise being denied his freedom from incarceration").

As stated, the disciplinary sanctions imposed on Petitioner were class reduction and isolation, with no loss of accrued good-time credits.  Petitioner does not allege and, as explained further below, nothing in the record demonstrates that success on his claims

would result (or would have resulted) in any change in the duration of his confinement in the ADC. His claims, therefore, would be more appropriately brought in a § 1983 civil rights action, rather than a federal habeas proceeding.

Moreover, the Court agrees that no due process violation occurred. The Fourteenth Amendment to the United States Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause does not protect prisoners from every adverse change in their confinement and does not, itself, create a protected liberty interest in any particular prisoner classification, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); in good-time credit for satisfactory behavior while in prison, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); or in being free from transfer to "less amenable and more restrictive quarters" in the prison, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Adjustments in classification as a result of disciplinary infractions are certainly a typical and expected component of prison life and do not "present a dramatic departure from the basic conditions of [an inmate's] sentence." *Id.* at 485. Under the applicable Arkansas statutes, the Board of Corrections is granted broad discretion in prescribing rules and regulations "for the maintenance of good order and discipline" in the state correctional

facilities, and in classifying ADC inmates according to "good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative activities." Ark. Code Ann. §§ 12-29-101, 12-29-103(a), 12-29-202(a)(3) (2003 & 2007 Supp.). Inmates may be reclassified "as often as the [classification] committee deems necessary ... to maintain good discipline, order, and efficiency at the units, facilities, or centers." *Id.* § 12-29-202(c). In short, nothing in the Arkansas statutes provides a basis for finding a protected liberty interest in the classification level assigned to an inmate by prison officials. *See Sanders v. Norris*, 153 Fed. Appx. 403, 404 (8th Cir. 2005) (unpub. *per curiam*) (ADC inmate has no constitutional right to particular prison classification); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer*, 628 F. Supp. 180, 181 (E.D. Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Additionally, a class reduction, with no accompanying loss of accrued good-time credits, did not "inevitably affect" Petitioner's term of confinement under Arkansas law, as contemplated by *Sandin*. At most, the reduction in class status deprived him of the opportunity to earn future good-time credits. Based on their level of classification, ADC inmates may earn up to thirty days of "meritorious good time" for each month of incarceration, thereby reducing an inmate's "transfer eligibility date," *i.e.*, the date he becomes eligible for transfer from the ADC to less restrictive placement or supervision by the Department of Community Correction (DCC). Ark. Code Ann. §§ 12-29-201(a) & (f)(1),

§ 12-29-202(b)(1), 12-29-204; *see id.* § 16-93-1202(2), (4), (11) & (12) (defining terms regarding transfer eligibility). Inmates who are reduced to the lowest class (Class IV) as a result of disciplinary action "shall not be entitled to earn meritorious good time." *Id.* § 12-29-202(b)(2). All or part of an inmate's accrued good time may be taken away by the ADC for infraction of prison rules. *Id.* § 12-29-203(a). However, these statutes do not provide an absolute entitlement to good time, stating only that an inmate "*may* be entitled" to meritorious good time, *id.* § 12-29-201(a)(1), and that an inmate who maintains a high classification "*may* earn" credit toward reduction of his transfer eligibility date, *id.* § 12-29-202(b)(1).

Furthermore, the statutes plainly state that "[m]eritorious good time will not be applied to reduce the length of a sentence," *id.* § 12-29-201(d); and that transfer to DCC supervision "shall not be considered as a reduction of sentence," *id.* § 16-93-1302(d). Therefore, although good time affects the date that an inmate may become eligible for transfer to less restrictive conditions, which may include parole, it has no effect on the length of the sentence imposed by the trial court. In *McKinnon v. Norris*, 231 S.W.3d 725 (Ark. 2006), the Arkansas Supreme Court rejected a prisoner's claim that the class reduction he received as a disciplinary penalty, which made him ineligible to gain credit for statutory meritorious good time, constituted the deprivation of a state-created liberty interest without due process. *Id.* at 728-30. The court stated: "[M]eritorious good time does not apply to reduce the length of a sentence. ... As a result, Arkansas has not created a liberty interest in good time under the constitutional analysis in *Wolff v. McDonnell*." *McKinnon*, 231 S.W.3d at 730; *see also Koontz v. Norris*, No. 08-75, 2008 WL 2310973, *2 (Ark. Sup. Ct. June 5, 2008) (unpub.) (no due process violation regarding prison

disciplinary that resulted in segregation, loss of class status, and loss of good-time credits); *Bayless v. Beck*, No. 04-69, 2005 WL 1411656, *2 (Ark. Sup. Ct. June 16, 2005) (unpub.) (no due process claim regarding prison disciplinary proceedings because "Arkansas has not created a liberty interest in good time"). The state "retains the authority to interpret the scope and availability of any state-conferred right or interest." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

Like the inmate in *McKinnon*, there is no evidence that Petitioner lost more than the *opportunity* to earn further good-time credits due to a class reduction. Restricting this ability as a disciplinary sanction is a typical and not unexpected occurrence in the prison environment. Moreover, because awarding good-time credits is discretionary, only affects an inmate's transfer eligibility date, and does not reduce his sentence, it cannot be said that good-time ineligibility due to reduced class status inevitably affects the duration of an inmate's sentence, as contemplated by *Sandin*. Therefore, his demotion to Class IV does not give rise to a protected liberty interest under federal or state law.[3]

Similarly, administrative or disciplinary segregation, particularly of brief duration as imposed here, is not the kind of "atypical and significant" deprivation that creates a liberty interest under *Sandin*. *Sandin*, 515 U.S. at 485-86 (thirty days of disciplinary segregation "did not work a major disruption in [a prisoner's] environment"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (thirty-seven days in punitive segregation); *Portley-El*, 288 F.3d

---

[3] Petitioner does not specify the relief sought. As Petitioner already has been transferred to DCC supervision, Respondent is correct that Petitioner's release moots any claims regarding delay of his transfer eligibility date. *See Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (habeas petition is moot when relief sought has been granted).

at 1065-66 (administrative and disciplinary segregation, and reclassification); *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2, 643 (8th Cir. 1996).

*Sandin* expressly recognized that disciplinary action by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Because Petitioner did not have a protected liberty interest under either federal or state law in his classification level or in remaining free from segregation, his due process claims fail.

Even if Petitioner were entitled to procedural protections, the record shows that he was afforded adequate process. To comport with due process where a protected liberty interest exists in connection with a prison disciplinary proceeding, a prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact-finder and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-67.

Due process also requires that the record contain "some evidence" to support the prison disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The relevant question "is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455 (emphasis added). This "some evidence" rule allows the federal courts to defer to the judgment of prison officials in maintaining discipline in their institutions while meeting constitutional requirements. *Id.* at 456. This limited review by federal courts does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence. *Id.* at 455. Prison officials can permissibly rely on conduct violation reports to find inmates guilty of disciplinary infractions. *Id.* at 456; *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th

Cir. 2008); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993). A report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as "some evidence" upon which to base a prison disciplinary decision, if the violation is found by an impartial decision-maker. *Hartsfield*, 511 F.3d at 831.

Here, the disciplinary records reflect that Petitioner was notified of the disciplinary charges at 9:28 a.m. on October 8, 2007, five days after the incident and two days before the hearing date. (Resp't Ex. A, at 2.) At the disciplinary hearing on October 10, 2007, Petitioner pleaded not guilty to the charges and was allowed to make a statement. (*Id.* at 2.) The disciplinary hearing officer found Petitioner guilty of two charges, but not guilty of two others. Her written report states the factual basis for finding guilt as follows: "Inmate was at his cell door with his penis exposed." (*Id.* at 3.) She stated that she was accepting the charging officer's eyewitness report rather than the inmate's account. (*Id.*) Petitioner fully utilized all levels of the administrative appeal process, and was successful in obtaining a reversal of one of the guilty decisions and in obtaining a reduction in the isolation term. (*Id.* at 3-4; Resp't Ex. B.) This was adequate to comport with the requirements of *Wolff* and *Hill*.

Furthermore, the conclusion that the disciplinary decision meets *Hill*'s "some evidence" standard "essentially checkmates" Petitioner's claim of retaliation. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). Eighth Circuit law is clear that a claim based on an allegedly retaliatory disciplinary charge fails if the charge was issued for the actual violation of a prison rule and "some evidence" supports the violation. *Hartsfield*, 511 F.3d at 829.

In summary, Petitioner's claims would be more appropriately brought in a § 1983 action, do not implicate a protected liberty interest under federal or state law and, even if such an interest is implicated, do not demonstrate that sufficient due process protections were lacking. Moreover, his retaliation claim fails due to the presence of "some evidence" supporting the disciplinary violation.

III.

For the reasons set forth above, this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 2) should be **denied**, dismissing this case in its entirety with prejudice.

DATED this 29th day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE